UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM SIM SPENCER,

            Petitioner,

                             CASE NO. 2:08-CV-12327
   v.                        JUDGE ANNA DIGGS TAYLOR
                             MAGISTRATE JUDGE PAUL J. KOMIVES

DAVID PRATT,

            Respondent.[1]

_____/

## REPORT AND RECOMMENDATION ON PETITIONER'S HABEAS APPLICATION (docket #1) AND PETITIONER'S MOTION FOR SUMMARY JUDGMENT (docket #20)

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.     *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.     *Petitioner's Plea Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     C.     *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     D.     *Information/Jurisdiction Claims (Claims I & VI, Questions 1-11 and 36)* . . . . . . . . . . . . . . . . . . 13
          1.    *Jurisdiction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
          2.    *Notice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
          3.    *Insufficient Evidence for Bind-Over* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     E.     *Plea/Ineffective Assistance Claims (Claims II-III, questions 12-15 and 18-20)* . . . . . . . . . . . . . . 20
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          2.    *Validity of Plea and Ineffective Assistance of Trial Counsel* . . . . . . . . . . . . . . . . . . . 22
               a. Coercive Effect of Retainer Agreement . . . . . . . . . . . . . . . . . . . . . . . . . 24
               b. Advice Regarding Sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
               c. Factual Basis and Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
               d. Innocence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
               e. Threat to Remove Petitioner's Children from Home . . . . . . . . . . . . . . . . . . . 34
               f. Conditions of Pretrial Confinement . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
          3.    *Ineffective Assistance of Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
     F.     *Remand/State Habeas Claims (Claim IV, Questions 21-24 and Questions 25-31)* . . . . . . . . . . . . 36
          1.    *Due Process on Remand (Claim IV, Questions 21-24)* . . . . . . . . . . . . . . . . . . . . . . 36
          2.    *State Habeas Proceedings (Questions 25-31)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
     G.     *Corpus Delicti (Claim V, Questions 16-17)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
     H.     *Double Jeopardy (Claim VII, Questions 37-38)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
     I.      *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

_____

     [1]By Order entered this date, David Pratt has been substituted in place of Nick Ludwick as the proper respondent in this action.

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus (docket #1).  The Court should also deny petitioner's motion for summary judgment (docket #20).

II.     <u>REPORT</u>:

A.     *Procedural History*[2]

1.     Petitioner William Sim Spencer is a state prisoner, currently confined at the Pugsley Correctional Facility in Kingsley, Michigan.

2.     On October 23, 2001, petitioner was convicted of eight counts of second degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c(1)(a), pursuant to his guilty plea in the Oakland County Circuit Court.  On February 1, 2002, he was sentenced to a term of 8-15 years' imprisonment.

3.     Petitioner, through counsel, filed a motion to withdraw his plea, asserting that the plea was not knowing and voluntary because he believed he would only receive a 3-5 year sentence and his attorney threatened him into pleading guilty because the attorney advised him he could face 70-80 years in prison if convicted at trial, and that he was innocent.  The trial court denied the motion on December 18, 2002.

4.     Petitioner, through counsel, filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

I.     DEFENDANT'S SENTENCE WAS NOT PROPORTIONATE TO THE SERIOUSNESS OF THE OFFENSES AND DANGEROUSNESS OF THE OFFENDER.  MR. SPENCER SHOULD BE RE-SENTENCED BY A DIFFERENT JUDGE.

---

[2]The record establishes that petitioner has filed numerous motions and pleadings, both in the state courts and in federal courts.  The procedural history herein focuses on those prior proceedings relevant to the instant habeas petition.

2

II.      DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL. DEFENDANT CLAIMS COUNSEL COERCED HIM INTO PLEADING GUILTY.

III.    THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ALLOW SPENCER TO WITHDRAW HIS PLEA.

The court of appeals denied petitioner's application in a standard order, "for lack of merit in the grounds presented." *People v. Spencer*, No. 245851 (Mich. Ct. App. Feb. 6, 2003) (per curiam).

5.      Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court.[3] The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Spencer*, 469 Mich. 907, 669 N.W.2d 817 (2003).

6.      On July 24, 2008, petitioner filed an application for a writ of habeas corpus in the United States District Court for the Western District of Michigan. On August 16, 2004, the court summarily dismissed the petition for lack of exhaustion. Petitioner filed a subsequent petition in that court on August 24, 2004.

7.      In the meantime, in September 2004 petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.      THE PROSECUTOR'S CLAIMS AGAINST THE ACCUSED MUST BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED BASED ON WANT OF JURISDICTION IN PERSONAM.

II.     THE COURT IS IN WANT OF SUBJECT MATTER JURISDICTION OVER THE CASE AT BAR FOR THERE IS NO LEGAL DUTY OF THE ACCUSED TO THE "PEOPLE OF THE STATE OF MICHIGAN." MOREOVER, THE COURT HAS VIOLATED THE DUE PROCESS RIGHTS OF THE ACCUSED BY FAILING TO FOLLOW THE MICHIGAN COURT RULES. IN THE INTEREST OF JUSTICE AND THE PRESERVATION OF THE DIGNITY OF THE COURT, THE UNLAWFUL

---

[3]Petitioner's application included several other issues, but these issues were ultimately withdrawn.

RESTRAINT OF LIBERTY OF THE ACCUSED MUST CEASE IMMEDIATELY.

III.     THE SUBSTANTIVE RIGHT OF THE ACCUSED TO BE REPRESENTED BY COUNSEL AT TRIAL WAS VIOLATED.  IN THE INTEREST OF JUSTICE AND THE PRESERVATION OF THE PUBLIC DIGNITY OF THE COURT, THE LIBERTY OF THE ACCUSED MUST BE RESTORED IMMEDIATELY.

IV.     THE JUDGMENT OF SENTENCE COMMITMENT TO CORRECTIONS DEPARTMENT IS INVALID BECAUSE THERE ARE NO CHARGES TO SUPPORT THE DETAINER AGAINST THE ACCUSED.  THERE BEING NO ASSESSMENT PURSUANT TO 28 USCA § 1359, THERE CAN BE NO CHANGE IN THE JUDGMENT WITHOUT A CIVIL ASSESSMENT MADE FOR THE PURPOSE OF PROSECUTING A TORT CLAIM, BY ORDER TO SHOW CAUSE WHY A TORT CLAIM SHOULD NOT ISSUE TO PURGE THE LIBEL.

V.     THE JUDGMENT OF SENTENCE IS INVALID AND NOT ENFORCEABLE AND THE ACCUSED IS ENTITLED TO RE-SENTENCING BECAUSE THE COURT INCREASED THE STATUTORY SENTENCING GUIDELINES RANGE IN HIS CASE BASED ON FACTS WHICH THE COERCED GUILTY PLEA DID NOT INCLUDE, IN VIOLATION OF *BLAKELY V. WASHINGTON*.

VI.     THE ACCUSED WAS PREJUDICED ON APPEAL AND THERE IS GOOD CAUSE WHY NONE OF THE ISSUES RAISED IN THIS BRIEF HAVE BEEN PREVIOUSLY RAISED DUE TO THE INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

VII.     THE TRIAL COURT DOES NOT HAVE THE AUTHORITY TO ENFORCE, ALTER, AMEND, OR RE-ISSUE THE JUDGMENT OF SENTENCE COMMITMENT TO CORRECTIONS DEPARTMENT AND IS CURRENTLY VIOLATING DUE PROCESS RIGHTS OF THE ACCUSED BY DEPRIVING HIM OF HIS LIBERTY AND HIS PROPERTY WITHOUT DUE PROCESS OF LAW.  MOREOVER, THE SUBSTANTIAL RIGHT OF THE ACCUSED TO BE SECURE IN HIS PERSONAL PAPERS IS BEING VIOLATED BY THE COURT.

On November 18, 2004, the trial court denied petitioner's motion for relief from judgment.  The

Michigan Court of Appeals denied petitioner's application for leave to appeal in a standard order,

based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR

6.508(D)." *People v. Spencer*, No. 266840 (Mich. Ct. App. June 22, 2006).

      8.      Petitioner filed an application for leave to appeal in the Michigan Supreme Court,

raising the following claims:

    I.      SPENCER IS ENTITLED TO REMAND FOR RESENTENCING BASED ON THE NON-EXISTENCE OF PARTICULAR SCORING FACTORS WHICH HAVE RESULTED IN A PRISON SENTENCE THAT IS OUTSIDE THE APPROPRIATE GUIDELINE RANGE.

    II.      UNDER MICHIGAN LAW, THE AGREEMENT TO PLEAD GUILTY NEVER BECAME ENFORCEABLE BECAUSE THE CONDITION PRECEDENT WAS NOT FULFILLED.  SPENCER HAS BEEN DENIED A TRIAL CONTRARY TO U.S. CONST. AMS. V, VI, AND XIV.

    III.      WITHOUT WAIVING HIS RIGHT TO COUNSEL, SPENCER WAS COERCED INTO PLEADING GUILTY WITHOUT ANY BENEFIT OF COUNSEL CONTRARY TO HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO THE ASSISTANCE OF COUNSEL.

    IV.      SPENCER WAS PREJUDICED AT THE CRIMINAL PROCEEDINGS AS A RESULT OF INADEQUATE NOTICE AND OPPORTUNITY TO DEFENDANT THE CHARGES.

    V.      THE SENTENCE VIOLATES FEDERAL LAW UNDER <u>BLAKELY V. WASHINGTON</u>.

    VI.      THE TRIAL COURT ERRED BY FINDING THAT SPENCER WAS NOT PREJUDICED ON APPEAL BY INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

    VII.      SPENCER IS ENTITLED TO RELEASE ON PERSONAL RECOGNIZANCE, REMAND, AND PEREMPTORY REVERSAL.

On April 11, 2007, the supreme court vacated petitioner's sentence and remanded for resentencing.

The court explained that the trial court had erred in scoring 50 points for Offense Variable (OV) 13

because petitioner's convictions did not involved sexual penetration, and that the correct score for

OV-13 was therefore 25 points.  The court instructed that, "[o]n remand, the trial court shall correct

the score on Offense Variable 13 and resentence defendant within the appropriate statutory sentencing

guidelines range, pursuant to the evaluation under *People v. Cobbs*, 443 Mich. 276 (1993), or permit

defendant to withdraw his plea." *People v. Spencer*, 477 Mich. 1086, 729 N.W.2d 225 (2007). In all

other respects, the supreme court denied petitioner's application for leave to appeal. *See id.*

9.      On May 4, 2007, the federal court dismissed petitioner's second federal habeas petition

as premature in light of the Michigan Supreme Court's remand for resentencing.

10.     On May 29, 2007, petitioner appeared for resentencing. At the resentencing hearing,

petitioner argued that he should be entitled to withdraw his plea both based on the Michigan Supreme

Court's remand order and on the fact that he was coerced into pleading guilty because he was

threatened that his children would be placed in protective custody if he did not plead guilty. The trial

court rejected petitioner's request to withdraw his plea, and resentenced him to a term of 80-180

months' (6 years, 8 months to 15 years) imprisonment.

11.     Following his resentencing, petitioner sought leave to appeal the trial court's resolution

of various motions he had filed. Petitioner's application for leave to appeal raised the following

claims:

I.      DOES MCL § 768.35 CREATE A LIBERTY INTEREST PROTECTED BY
        U.S. CONST. AM. XIV, WHEREBY SPENCER COULD REASONABLY
        FORM AN OBJECTIVE EXPECTATION THAT THE TRIAL JUDGE
        WOULD VACATE THE GUILTY PLEA AFTER IT BECAME CLEAR ON
        REMAND AND PRIOR TO RESENTENCING THAT THE GUILTY PLEA
        WAS FACTUALLY INSUFFICIENT; AND DID THE TRIAL JUDGE
        ABUSE HER DISCRETION ON REMAND BY FAILING TO UPHOLD OR
        ENFORCE MCL § 768.35 WITH THE RESULT THAT SPENCER'S LEGAL
        RIGHTS WERE DENIED?

II.     DOES THE LEGAL PRINCIPLE – THAT ONCE JURISDICTION OF THE
        COURT IS CHALLENGED IT MUST BE ASSERTED AND PROVEN BY
        THE PLAINTIFF – CREATE A LIBERTY INTEREST PROTECTED BY
        U.S. CONST. AM. XIV, WHEREBY SPENCER COULD REASONABLY
        FORM AN OBJECTIVE EXPECTATION THAT HIS PRESENTENCE
        CHALLENGE ON REMAND TO THE TRIAL COURT'S SUBJECT
        MATTER JURISDICTION WOULD NOT BE DENIED WITHOUT ANY

ATTEMPT BY THE PROSECUTOR TO ASSERT AND PROVE JURISDICTION; AND DID NOT TRIAL JUDGE ABUSE HER DISCRETION ON REMAND BY WAIVING ORAL ARGUMENT ON SPENCER'S MOTION TO REMAND TO DISMISS THE CRIMINAL ACTION FOR WANT OF SUBJECT MATTER JURISDICTION AFTER THE PROSECUTOR MADE NO ATTEMPT TO ASSERT AND PROVE SUBJECT MATTER JURISDICTION?

III.     DOES MCL § 768.29 CREATE A LIBERTY INTEREST PROTECTED BY U.S. CONST. AM. XIV, WHEREBY SPENCER COULD REASONABLY FORM AN OBJECTIVE EXPECTATION THAT THE TRIAL JUDGE WOULD RULE ON IS PENDING MOTION TO REMAND TO COMPLY WITH MCL § 768.35 AND QUASH THE CONSTITUTIONALLY DEFICIENT INFORMATION, AS WELL AS HIS ORAL OBJECTIONS AT THE 29 MAY 2007 HEARING; AND DID THE TRIAL JUDGE ABUSE HER DISCRETION BY REFUSING TO RULE ON SPENCER'S PRESENTENCE MOTION TO REMAND TO COMPLY WITH MCL § 768.35 AND QUASH THE CONSTITUTIONALLY DEFICIENT INFORMATION, AS WELL AS, SPENCER'S ORAL OBJECTIONS AT THE 29 MAY 2007 HEARING?

IV.     WHERE THE RECORD REVEALS THAT THE TRIAL JUDGE HAS INTENTIONALLY VIOLATED THE LEGAL RIGHTS OF THE DEFENDANT, SHOULD THE CASE BE RE-ASSIGNED TO A DIFFERENT JUDGE; AND DO THE TRIAL JUDGE'S INTENTIONAL VIOLATIONS OF SPENCER'S LEGAL RIGHTS, REVEALED BY THE RECORD, REQUIRED THAT THE CASE BE RE-ASSIGNED TO A DIFFERENT JUDGE?

The Michigan Court of Appeals dismissed petitioner's application for leave to appeal on August 30, 2007, concluding that petitioner's various trial court motions amounted to successive motions for relief from judgment prohibited by MICH. CT. R. 6.502(G). *See People v. Spencer*, No. 279167 (Mich. Ct. App. Aug. 30, 2007). Petitioner filed a motion for reconsideration, raising additional claims relating to the validity of the information and his guilty plea. The court of appeals denied the motion for reconsideration. *See People v. Spencer*, No. 279167 (Mich. Ct. App. Oct. 16, 2007). Petitioner filed an application for leave to appeal these issues in the Michigan Supreme Court. The application was denied in a standard order. *See People v. Spencer*, 480 Mich. 1008, 743 N.W.2d 10 (2008).

7

Petitioner subsequently filed at least two state petitions for habeas corpus, and appeals relating to these petitions.  All were denied by the state courts.

    12.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on May 30, 2008.  As set forth in the table of contents to his application, petitioner raises the following grounds for relief:

I.    THE CONVICTION IS ABSOLUTELY VOID.

    (a) Spencer was convicted under irregular process since he was bound over on insufficient evidence under a felony complaint that failed to provide actual notice of the essential elements of the accusation against which he was to defend and did not vest the trial court with subject matter jurisdiction as required by the Sixth and Fourteenth Amendments.

II.    INEFFECTIVE ASSISTANCE OF COUNSEL.

    (a) Spencer was convicted without the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments.

    (b) Spencer was convicted without the effective assistance of appellate counsel guaranteed by the Sixth and Fourteenth Amendments.

III.    COERCED GUILTY PLEA.

    (a) Spencer's plea was coerced.

    (b) The guilty plea is factually insufficient.

IV.    LIBERTY INTEREST VIOLATIONS ON REMAND

    (a) Spencer's Constitution [sic] protected liberty interest in the enforcement of MCL 768.35 was violated.

    (b) Spencer's Constitution [sic] protected liberty interest in the trial court's compliance with United States Supreme Court precedent was violated.

    (c) Spencer's Constitution protected liberty interest in the trial court's compliance with MCL 768.29 was violated.

V.    FAILURE TO ESTABLISH CORPUS DELICTI.

VI.     THE FELONY COMPLAINT SHOULD BE QUASHED.

VII.    THE DOUBLE JEOPARDY CLAUSE FORBIDS A SECOND TRIAL.[4]

In addition to this listing of his claims, petitioner's application sets forth 38 "Questions Presented."

Questions 1-5 are related to Claim I and challenge the sufficiency of the indictment; Questions 6-11

are also related to Claim I and challenge the trial court's jurisdiction; Questions 12-15 are related to

Claim III and challenge the validity of petitioner's guilty plea; Questions 16-17 are related to Claim

V and challenge the lack of corpus delicti; Questions 18-20 are related to Claim II and challenge

counsel's effectiveness; Questions 21-24 are related to Claim IV and assert the denial of due process

in connection with the remand for resentencing; Questions 25-31 challenge the state courts' denial

of his state habeas petitions and are not related to the claims set forth in the table of contents;

Questions 32-35 address exhaustion; Question 36 is related to Claim VI and asserts that the criminal

complaint should have been quashed; and Questions 37-38 are related to Claim VII and assert double

jeopardy violations.

13.     Respondent filed his answer on December 5, 2008.  He contends that petitioner's

claims are either without merit or not cognizable on habeas review.

14.     Petitioner filed a reply to respondent's answer on January 12, 2009.

15.     Also pending before the Court is petitioner's motion for summary judgment, filed on

January 12, 2009.  Respondent filed a response on July 1, 2009, and petitioner filed a reply on July

10, 2009.

B.      *Petitioner's Plea Proceedings*

---

[4]The table of contents also lists, as a claim for relief, a claim that the AEDPA's exhaustion
requirement is not applicable.  This is not a substantive basis for relief, and respondent does not argue
that petitioner's claims are unexhausted.

Petitioner was charged with 8 counts of second degree criminal sexual conduct (CSC-II), arising from eight separate assaults of four girls under the age of 13. On the date set for a pretrial hearing, petitioner indicated that he wished to plead guilty to all of the charges. The plea was not pursuant to a plea agreement with the prosecutor, but was made pursuant to a *Cobbs* agreement[5] in which the court agreed to sentence petitioner within the Michigan sentencing guidelines. After swearing-in petitioner to take his plea, the court asked petitioner whether he could understand his attorney and was satisfied with counsel's advice. Petitioner responded affirmatively to both questions. *See* Plea Tr., at 6. The court explained to petitioner that he was pleading guilty to eight counts of CSC-II, and that each count carried a potential maximum penalty of 15 years' imprisonment, and petitioner indicated that he understood. *See id*. Petitioner indicated that he understood the court's *Cobbs* evaluation that the sentence would be within the guidelines, and the prosecutor confirmed that there was no plea agreement in the case. *See id*. at 6-7. The court then informed petitioner of the rights he was giving up by pleading guilty, including the rights to a jury trial, to be presumed innocent, to have process for compelling the attendance of witnesses, to remain silent or testify, and to appeal by right. Petitioner indicated that he understood each of these rights he was waiving by pleading guilty. *See id*. at 7-8. The court then elicited from petitioner that it was his desire to plead guilty:

> Q.   Mr. Spencer, has anyone threatened you to get you to plead guilty?
> A.   No.
> Q.   Is it your own choice to plead guilty?
> A.   Yes.

*Id*. at 9. Petitioner admitted to each sexual contact forming the basis of the charges against him. *See*

---

[5]*People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), permits a defendant to plead guilty pursuant to the trial court's initial evaluation as to the appropriate sentence, subject to the defendant's right to withdraw his plea if the actual sentence imposed is more severe.

*id.* at 9-10.  The prosecutor and defense counsel indicated that they were satisfied with the plea, and the court entered the plea finding it to be "freely, voluntarily, accurately and intelligently made, [and that] there exists a factual basis to for [sic] it."  *Id.* at 10.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to

11

'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.*

*Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Information/Jurisdiction Claims (Claims I & VI, Questions 1-11 and 36)*

Petitioner's first and sixth claims, and Questions 1-11 and 36 of his "Questions Presented," challenge the sufficiency of the information in his case.  Petitioner's contends that the information was insufficient to provide him notice of the charges against him, and that the trial court lacked jurisdiction over the charges against him.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Jurisdiction*

Petitioner first claims that the Information insufficiently charged a crime against him, and thus the trial court never acquired subject matter jurisdiction.  This claim is not cognizable on habeas review.  It is well-established that habeas review does not extend to questions of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws.").  "A determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary."  *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (per curiam); *accord Rhode v. Olk-Long*, 84 F.3d 284, 287 (8th Cir. 1996); *Wesselman v. Seabold*, 834 F.2d 99, 102 (6th Cir. 1988); *United States ex rel. Holliday v. Sheriff of Du Page County, Ill.*, 152 F. Supp. 2d 1004, 1013 (N.D. Ill. 2001).  As the Supreme Court has long explained, "there is nothing in the clauses of the 14th Amendment guarantying [sic] due process and equal protection which converts an issue respecting the jurisdiction of a state court under the Constitution and statutes of the state into anything other than a question of state law[.]"  *Gasquet v.*

*Lapeyre*, 242 U.S. 367, 369 (1917). Whether an indictment or information is sufficient to confer

jurisdiction on a trial court is likewise an issue of state law which is not cognizable on habeas review.

*See McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994); *Rose v. Johnson*, 141 F. Supp. 2d 661, 694 (S.D.

Tex. 2001). Challenges to the sufficiency of a state court indictment will be cognizable on federal

habeas review only where the amendment deprives a petitioner of his due process right to fair notice

of the charges against him. *See Boothe v. Wyrick*, 452 F. Supp. 1304, 1310 (W.D. Mo. 1978).

In any event, even if petitioner's claim were cognizable he cannot show that the circuit court

lacked jurisdiction to try him. Although petitioner phrases his claim as going to the circuit court's

subject matter jurisdiction, this type of jurisdiction is not implicated. As the Michigan Supreme Court

has explained, subject matter jurisdiction is "the right of the court to exercise jurisdiction over a class

of cases." *People v. Goecke*, 457 Mich. 442, 458, 579 N.W.2d 868, 876 (1998). Subject matter

jurisdiction refers to the court's power to rule in the particular class of case in the abstract, not the

court's power in the particular case before the court. *See id*. at 458 n.16, 579 N.W.2d at 876 n.16.

The circuit court, as a court of general jurisdiction, *see* MICH. CONST. art. 6, § 13; MICH. COMP. LAWS

§§ 600.151, .601, undoubtedly has the power to rule in criminal cases. *See Goecke*, 457 Mich. at 458,

579 N.W.2d at 876. Thus, the only question is whether the circuit court had personal jurisdiction over

petitioner. Under Michigan law, "[t]he circuit court acquires [personal] jurisdiction upon the filing

of a proper return by the magistrate before whom the defendant has either been examined or waived

examination." *People v. Gaines*, 53 Mich. App. 443, 447, 220 N.W.2d 76, 78 (1974) (citing *People

v. Curtis*, 389 Mich. 698, 707, 209 N.W.2d 243, 247-48 (1973)); *see also*, *Goecke*, 457 Mich. at 458,

579 N.W.2d at 876. Once that happened in petitioner's case, the circuit court did not lose jurisdiction

even if the Information filed by the prosecutor was defective in some way. *See Goecke*, 457 Mich.

at 458, 579 N.W.2d at 876 ("Having once vested in the circuit court, personal jurisdiction is not lost

14

even when a void or improper information is filed."); *People v. Miklovich*, 375 Mich. 536, 539, 134 N.W.2d 720, 722 (1965) ("Jurisdiction, having once vested in the circuit court, was not lost by virtue of the granting of the motion to quash the information."). Thus, even if the Information filed by the prosecutor was defective, the circuit court nevertheless had jurisdiction over petitioner. Accordingly, petitioner is not entitled to habeas relief on this claim.

      2.    *Notice*

      The Sixth Amendment provides, in relevant part, that a criminal defendant has the right to "be informed of the nature and cause of the accusation" against him. U.S. CONST. amend VI. Notice and an opportunity to defend against the charges as guaranteed by the Sixth Amendment are an integral part of the due process protected by the Fourteenth Amendment, and are accordingly applicable in state prosecutions. *See Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *In re Oliver*, 333 U.S. 257, 273 (1948). "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir. 1988); *accord Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Sharrar v. Foltz*, 658 F. Supp. 862, 865 (E.D. Mich. 1987) (Newblatt, J.), *aff'd*, 842 F.2d 333 (6th Cir. 1988). The complaint or indictment challenged need not be perfect under state law so long as it adequately informs the petitioner of the crime in sufficient detail so as to enable him to prepare a defense. Thus, "[a]n indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986); *see also*, *United States v. Buckley*, 689 F.2d 893, 899 (9th Cir. 1982); *Ransom v. Davis*, 613 F. Supp. 430, 431 (M.D. Tenn. 1984), *aff'd*, 767 F.2d 921 (6th Cir. 1985). "[A] charge is sufficiently specific when it contains the elements of the crime,

15

2:08-cv-12327-ADT-PJK   Doc # 32   Filed 07/30/09   Pg 16 of 40   Pg ID 1957

permits the accused to plead and prepare a defense, and allows the disposition to be used as a bar in a subsequent prosecution." *Fawcett v. Bablitch*, 962 F.2d 617, 618 (7th Cir. 1992).

Petitioner contends that he did not have notice of the charges against him because the Information did not charge all of the elements of the offense. Specifically, he contends that the Information did not charge that he engaged in intentional sexual contact or acted for the purpose of sexual arousal or gratification. The Court should reject this claim.

As relevant here, the CSC-II statute provides that "[a] person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists: (a) That other person is under 13 years of age." MICH. COMP. LAWS § 750.520c(1)(a). The statute itself defines "sexual contact" as including "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, *if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner* for: (I) Revenge. (ii) To inflict humiliation. (iii) Out of anger." MICH. COMP. LAWS § 750.520a(q) (emphasis added).[6] The Information in petitioner's case charged, with respect to each count, that petitioner "did engage in *sexual contact* with another person, to wit: [the particular victim relevant to the count], said person being under 13 years of age; Contrary to the statute in such case made and provided," (emphasis added) and cited to § 750.520c(1)(a).[7]

By explicitly citing the statutory provision and charging petitioner with engaging in "sexual

---

[6]At the time of petitioner's trial, the definition of sexual contact was set forth in § 750.520a(l).

[7]A copy of the Information is attached in Vol. II, pp. 1-6, of petitioner's Appendix in Support of Petition for Writ of Habeas Corpus. It is also attached as Appendix 1 to petitioner's Motion for an Order Requiring that Respondent File a Copy of the General Information, filed on January 28, 2009.

16

contact," the Information charged petitioner with the conduct set forth in §§ 750.520a(q) and 750.520c(1)(a).  The federal courts "have consistently sustained indictments which track the language of a statute and, in addition, do little more than state time and place in approximate terms."  *United States v. Salazar*, 485 F.2d 1272, 1277 (2d Cir. 1973); *see also*, *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (internal quotation omitted) ("[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.").  As the Supreme Court has explained, it is "generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)).

Petitioner's reliance on *Carll* and *United States v. Foley*, 73 F.3d 484 (2d Cir. 1996), *abrogated on other grounds by United States v. Santopietro*, 166 F.3d 88 (2d Cir. 1999), is misplaced.  In *Carll*, the Court held that an indictment tracking the words of the statute is not sufficient if the words of the statute themselves do not fully set forth all the elements of the offense, and explained that "the fact that the statute in question, read in light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent."  *Carll*, 105 U.S. at 612-13.  Similarly, in *Foley* the Second Circuit explained that when "one element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense." *Foley*, 73 F.3d at 488.  *Carll* and *Foley* are inapposite, however, because the CSC-II statute fully sets

17

forth all the elements of the crime, without resort to the common law explication of the statute or implicit elements. As the Michigan Court of Appeals has repeatedly noted, the CSC-II statute (as charged against petitioner), contains two elements: "(a) sexual contact, (b) with a person under 13 years of age." *People v. Soltesz*, No. 279275, 2009 WL 323491, at *2 (Mich. Ct. App. Feb. 10, 2009); *People v. Greer*, No. 278746, 2009 WL 279868, at *2 (Mich. Ct. App. Feb. 5, 2009); *People v. Jones*, No. 212117, 2000 WL 33406544, at *1 (Mich. Ct. App. Oct. 17, 2000); *People v. McCary*, No. 196810, 1997 WL 33347853, at *1 (Mich. Ct. App. June 17, 1997). These two elements were charged in each count of the Information, and no implicit elements of the crime were excluded from the Information. Sexual purpose is merely part of the definition of the statutory element "sexual contact." Because the statutory term "sexual contact" is defined by law to require the touching to have been done for the purpose of sexual arousal or gratification, the use of "sexual contact" in the Information fully set forth the elements of the offenses without any uncertainty or ambiguity, and petitioner was on notice of the mental-state element of the offenses. Thus, the information provided him with sufficient notice of the charges against him, alleged all the elements of the offense, and provided sufficient information that the Information could be used as a bar to subsequent prosecution. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

      3.    *Insufficient Evidence for Bind-Over*

Petitioner also suggests that there was insufficient evidence of sexual purpose to support a bind-over on the Information. However, no evidence of sexual purpose at all was presented in support of the bind-over, because petitioner himself waived the preliminary examination. In any event, even had petitioner not waived the preliminary examination and there been insufficient evidence of sexual purpose presented, petitioner would not be entitled to habeas relief on this basis.

There is no general constitutional right to a preliminary examination before trial. *See Gerstein*

*v. Pugh*, 420 U.S. 103, 125 n.26 (1975); *Harris v. Neil*, 437 F.2d 63, 64 (6th Cir. 1971). Thus, a state

court's failure to even hold a preliminary examination does not present a cognizable habeas claim.

*See Scott v. Bock*, 241 F. Supp. 2d 780, 793 (E.D. Mich. 2003) (Lawson, J.). Similarly, therefore, a

claim that the evidence offered at a preliminary examination was insufficient for a finding of probable

cause is not cognizable on habeas review. *See David v. Lavinge*, 190 F. Supp. 2d 974, 978 (E.D.

Mich. 2002) (O'Meara, J.). Second, it is an "established rule that illegal arrest or detention does not

void a subsequent conviction." *Gerstein*, 420 U.S. at 119 (citing *Frisbie v. Collins*, 342 U.S. 519

(1952); *Ker v. Illinois*, 119 U.S. 436 (1886)). Thus, "although a suspect who is presently detained

may challenge the probable cause for that confinement, a conviction will not be vacated on the ground

that the defendant was detained pending trial without a determination of probable cause." *Gerstein*,

420 U.S. at 119. Because petitioner is now incarcerated pursuant to a valid conviction, he cannot

challenge the preliminary procedures employed prior to his trial. Accordingly, the Court should

conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Plea/Ineffective Assistance Claims (Claims II-III, questions 12-15 and 18-20)*

         Petitioner next challenges the validity of his guilty plea and the effectiveness of his counsel's

representation.

         1.       *Clearly Established Law*

         A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the

totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v.

Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The Constitution requires, for a plea to be valid, that the

defendant be informed of all direct consequences of his plea. *See Brady*, 397 U.S. at 755; *King*, 17

F.3d at 153. A solemn declaration of guilt by the defendant carries a presumption of truthfulness.

*See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).

19

"The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted).

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome

20

the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also, O'Hara*, 24 F.3d at 828. However, with respect to the prejudice prong it is not enough for petitioner to merely allege that he would have insisted on going to trial had counsel properly advised him. As other judges of this Court have explained:

> In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id*. at 58-60, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim. Petitioner must show that there is a reasonable probability that the result of the proceeding would have been different. It is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also, Thirkield v.*

*Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

      2.     *Validity of Plea and Ineffective Assistance of Trial Counsel*

Petitioner contends that he was coerced into pleading guilty by the actions of trial counsel. Specifically, he contends that counsel forced him to either pay him a new fee in full or agree to an addendum to the retainer agreement allowing counsel to withdraw if petitioner did not plead guilty; misadvised him regarding sentencing; and allowed him to plead guilty to a non-existent crime because he is innocent. Petitioner also contends that he was coerced into pleading guilty because he was threatened that his children would be removed from his home if he did not plead guilty.

At the outset, petitioner's ineffective assistance of counsel and coercion claims are belied by the record. At the plea colloquy, petitioner explicitly expressed his satisfaction with counsel's advice, and denied that any threats or promises had been made or that he had been coerced into pleading guilty. *See* Plea Tr., at 6, 9. These statements "carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). As a number of Judges of this Court have observed:

> When a petitioner brings a federal habeas petition challenging his plea of guilty (or no contest), the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. . . . Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his or her guilty plea,

22

as evidenced by the plea colloquy, is valid.

*Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 749 (E.D. Mich. 2005) (Gadola, J.) (citations omitted); *accord Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 651-52 (E.D. Mich. 2002) (Friedman, J.); *Hastings v. Yukins*, 194 F. Supp. 2d 659, 669 (E.D. Mich. 2002) (Cleland, J.); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 586 (E.D. Mich. 2001) (Hood, J.); *Myers v. Straub*, 159 F. Supp. 2d 621, 626 (E.D. Mich.2001) (Steeh, J.).   In short where, as here, "the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."   *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (internal quotation omitted).   In view of this standard and petitioner's statements at the plea colloquy, petitioner's coercions and ineffective assistance of counsel claims are without merit.

### a.  Coercive Effect of Retainer Agreement

Petitioner first contends that his plea was the result of a coercive retainer agreement with counsel.  Petitioner executed the initial "Engagement Fee Agreement" on April 16, 2001, well before trial and even before all of the charges against petitioner had been brought.   In the agreement, petitioner agreed to pay his counsel "the non-refundable minimum flat fee of $5000.00 for services rendered beginning on the 16[th] day of April, 2001; and to PAY ANY and ALL reasonable and necessary COSTS and EXPENSES that ATTORNEY may incur."   Pet., App'x Vol. VI, at 378. Petitioner further agreed "to pay in addition the sum of $ TO BE DETERMINED as a Trial fee, if the case and/or cases come(s) to trial."  *Id*.  On August 16, 2001, two months before the plea, petitioner and his counsel executed an addendum to the engagement fee agreement.   The addendum acknowledged that petitioner had only paid $2,300.00 of the initial $5,000.00 retainer fee.   In the addendum, petitioner agreed that counsel would "represent him through the Preliminary Exam (which he agrees to waive), and any plea negotiations or bargaining up until thirty (30) days prior to Trial."

23

*Id*. at 380.  Petitioner also agreed that, if he did not take the advice of counsel, then counsel could withdraw from representation immediately.  *See id*.  At the time scheduled for the arraignment on the Supplemental Information, which added some counts against petitioner, counsel indicated that he was only retained to represent petitioner on some of the counts.  *See* Arraignment Tr., dated 10/9/01, at 4.  The court responded: "There is nothing in the Court Rules that allow for a limited appearance on a certain number of counts.  There's no separate case here.  There's one case with 8 counts.  So either you are representing Mr. Spencer on all 8 counts or you are not representing Mr. Spencer[.]" *Id*.  The court then explained the situation to petitioner:

| | |
|---|---|
| THE COURT: | Now what's going on here, Mr. Spencer, is that Mr. Katz is representing to this Court that you have retained him for only a certain number of Counts in this case and not for all 8 Counts; do you understand that? |
| DEFENDANT: | Yes. |
| THE COURT: | Do you understand that that's not possible; that you either have Counsel that represents you for your case or you can't afford Counsel to represent you for your case and in that case, I will be happy to appoint counsel for you in this matter but you can't have it – there's no cup half full here. |
| | If you can't afford Mr. Katz to represent you for your entire matter, I can appoint counsel for you for the entire matter but there's no splitting the baby on this. |
| | Do you understand that? |
| DEFENDANT: | As you've told m, I understand it. |
| THE COURT: | Is it your intention to retain Mr. Katz for all 8 Counts? |
| DEFENDANT: | Yes. |
| THE COURT: | Okay.  Then that needs to get done and that needs to get done by next week and we're going to set a pretrial for this matter for next week if that hasn't been done, I am going to go – then I will be – I will be appointing counsel for you if you cannot afford counsel for the entire matter, okay? |

*Id*. at 5-6.

Petitioner contends that the fee agreement, and particularly the addendum, coerced him into pleading guilty.  The Court should disagree.  As the Supreme Court has recently explained, "the right

to counsel of choice does not extend to defendants who require counsel to be appointed for them."
*United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).  On the contrary, a criminal defendant
has no right to "insist upon being represented by an attorney who declines to represent him."  *People
v. Howard*, 876 N.E.2d 36, 46 (Ill. Ct. App. 2007); *see also*, *Wheat v. United States*, 486 U.S. 153,
159 (1988) ("[A] defendant may not insist on representation by an attorney he cannot afford or who
for other reasons declines to represent the defendant.").  Thus, petitioner did not have a right to
continued representation by an attorney he could not afford to pay.  Nor can petitioner show that his
attorney was acting under a conflict of interest such that the presumed prejudice standard of *Cuyler
v. Sullivan*, 446 U.S. 335 (1980), rather than the ordinary *Strickland* standard, applies.  Although a
conflict of interest "may arise when a client's interests are adverse to his lawyer's pecuniary
interests," *Daniels v. United States*, 54 F.3d 290, 294 (7th Cir. 1995), "a fee dispute does not, per se,
create an actual conflict of interest."  *Crowe v. Terry*, 426 F. Supp. 2d 1310, 1326 (N.D. Ga. 2005);
*see also*, *United States v. Stewart*, 182 F. Supp. 2d 97, 101 n.11 (D. Me. 2002).  "Although a
'defendant's failure to pay fees may cause some divisiveness between attorney and client,' courts
generally presume that counsel will subordinate his or her pecuniary interests and honor his or her
professional responsibility."  *United States v. Taylor*, 139 F.3d 924, 932 (D.C. Cir. 1998) (quoting
*United States v. O'Neil*, 118 F.3d 65, 71 (2d Cir. 1997)).  Ineffective assistance claims arising from
fee disputes are therefore governed by *Strickland* rather than *Cuyler*.  *See O'Neil*, 118 F.3d at 71;
*United States v. Zhadanov*, No. 93-240-3, 1998 WL 633698, at *2 (E.D. Pa. Aug. 11, 1998).

Importantly, there was nothing ethically improper with either the initial retainer agreement or
the addendum limiting counsel's representation to the pre-trial phase of the litigation.  The Michigan
Rules of Professional Conduct explicitly provide that "[a] lawyer may limit the objectives of the
representation if the client consents after consultation."  MICH. R. PROF. CONDUCT § 1.2(b).  The

comment to this rule explains that, "[f]or example, a retainer may be for a specifically defined purpose." *Id.*, comment.  Importantly, this is not a case in which counsel abruptly demanded an increased fee on the eve of trial.  *Cf.* ABA STANDARDS FOR CRIMINAL JUSTICE § 4-3.3, comment ("A lawyer who demands that the client pay an additional fee on the eve of trial beyond that which had been previously agreed may be particularly suspect.").  Rather, well before trial petitioner entered into a retainer agreement which explicitly provided for an additional fee if the matter went to trial. Further, the addendum was executed two months before petitioner's plea, and again explicitly limited counsel's representation to the plea stage of the proceedings.  Further, when the fee dispute was brought to the court's attention two weeks prior to petitioner entering his plea, the court explicitly informed petitioner that if he could not afford to pay counsel, the court would appoint counsel for him at state expense.  *See* Arraignment Tr., dated 10/9/01, at 5-6.  Petitioner, with full knowledge of the terms of counsel's representation, indicated his desire that counsel continue to represent him.  *See id.* at 6.  Again at the plea the court informed petitioner that he had the right to have a "lawyer represent you from start to finish, including trial, sentence and an application for appeal, and the Court will appoint a lawyer for you if you cannot afford a lawyer of your own choice."  Plea Tr., at 7.  Petitioner indicated that he understood this right, *see id.*, and expressed both that he was satisfied with counsel's advice and was pleading guilty of his own free will.  *See id.* at 6, 9.

The record thus establishes that petitioner was not surprised by a demand for more money from counsel on the eve of trial.  Rather, the scope of counsel's representation was fully set forth in the retainer agreement and addendum, both of which were executed well before his plea.  Petitioner was informed two weeks before his plea, and again at his plea, that he had the right to counsel through trial and appeal, and that if he could not afford counsel the court would appoint counsel for him.  In these circumstances, petitioner cannot show that the fee arrangement with counsel had the effect of

26

2:08-cv-12327-ADT-PJK   Doc # 32   Filed 07/30/09   Pg 27 of 40   Pg ID 1968

coercing him to plead guilty and the facts alleged by petitioner are insufficient to belie his on-the-record statements regarding his satisfaction with counsel and the voluntariness of his plea. *See Cretney v. United States*, No. 03-80401, 2006 WL 276980, at *2 (E.D. Mich. Feb. 2, 2006) (Steeh, J.) (claim that plea was coerced by counsel's threat, based on non-payment of fee, to withdraw if he did not plead without merit where petitioner indicated on the record that he knew he had a right to appointed counsel; "petitioner has failed to show that he was coerced into [pleading guilty] because he was aware that if he wished to go to trial he would have an attorney."); *cf. Shanks*, 387 F. Supp. 2d at 750-51 (petitioner not entitled to relief based on claim that plea was coerced by counsel's threat to withdraw because counsel was unprepared for trial where claim was belied by the record establishing petitioner's satisfaction with counsel and denial of any threats, and trial court had granted adjournment of trial for further preparation). Accordingly, the Court should conclude that petitioner is not entitled to habeas relies on this basis.

### b. Advice Regarding Sentence

Petitioner also claims that his plea was involuntary because it was based on the erroneous advice of counsel regarding his sentence. Specifically, petitioner contends that counsel erroneously advised him both that if he pleaded guilty he would only serve 3-4 years in prison, and that if convicted at trial he faced a potential 70-80 years sentence. The Court should conclude that petitioner is not entitled to habeas relief on this basis.

With regard to the term of imprisonment petitioner was likely to serve if he pleaded guilty, the Supreme Court has explained:

> Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

27

That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann v. Richardson*, 397 U.S. 759, 770 (1970).  Thus, counsel's allegedly erroneous advice regarding petitioner's likely sentence does not provide a basis for habeas relief.  *See Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993).  Importantly, the trial judge informed petitioner that no specific sentence was contemplated by the agreement, and that the only agreement was that petitioner would be sentenced within the guidelines.  Petitioner also indicated that he understood there was no plea agreement in the case, and denied that he had been promised any thing to induce his plea.  Further, the court explained to petitioner that he faced a maximum term of 15 years' imprisonment on each charge.  Thus, any prejudicial effect of trial counsel's erroneous advice was cured by the trial court's statements to petitioner, and petitioner's plea was not involuntary because of counsel's erroneous advice.  *See Christy v. Lafler*, No. 05-CV-74390-DT, 2007 WL 1648921, at *5 (E.D. Mich. June 6, 2007) (Cleland, J.); *Owczarczak v. Bock*, No. 01-10031-BC, 2004 WL 192414, at *5 (E.D. Mich. Sept. 26, 2004) (Lawson, J.); *cf. Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (internal quotation omitted) (plea not rendered involuntary by counsel's erroneous advice regarding sentencing where trial court's plea colloquy "apprised [the petitioner] of the actual sentencing possibilities.").

Nor can petitioner show that counsel was ineffective for advising him that he faced a potential 70-80 term of imprisonment if convicted at trial.  Even assuming that counsel made such a statement to petitioner, it was not inaccurate.  Petitioner was charged with eight counts of CSC-II, each of which carried a potential 15 year sentence.  Because petitioner was charged with eight separate felonies, if convicted he could have been sentenced as an habitual offender to a term of life imprisonment.  *See* MICH. COMP. LAWS § 769.12(1)(a).  This is so even though the eight felonies were charged in a single

28

criminal case, as they arose out of separate criminal incidents spanning several months.  *See People v. Smith*, No. 223795, 2001 WL 1565056, at *3-*4 (Mich. Ct. App. Dec. 7, 2001).  *See generally*, *People v. Preuss*, 436 Mich. 714, 461 N.W.2d 703 (1990).[8]  Thus, petitioner cannot show that counsel's advice regarding the maximum possible sentence if convicted after trial was erroneous. This being the case, petitioner cannot show that counsel was ineffective for advising him that he faced the possibility of an extremely long sentence if he was convicted after trial.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Factual Basis and Jurisdiction

Petitioner also suggests that his plea is invalid and counsel was ineffective for allowing him to plead because a factual basis was not established for the crime, the court lacked jurisdiction, and he is innocent.

With respect to the factual basis, petitioner recognizes that "[t]he requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution[.]" *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995).  Because the writ of habeas corpus exists only to correct errors of federal law, therefore, a state court's failure to elicit a factual basis for a guilty plea does not state a claim cognizable on habeas review.  *See United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc); *Willbright v. Smith*, 745 F.2d 779, 780

---

[8]In *People v. Stoudemire*, 429 Mich. 262, 414 N.W.2d 693 (1987), the court held that habitual offender status could not be based on multiple convictions arising from a single criminal transaction. In *Preuss*, *supra*, the court retained this rule, but clarified that no particular order is required for the convictions and habitual offender status can be based on convictions entered at the same time.  In *People v. Gardner*, 482 Mich. 41, 753 N.W.2d 78 (2008), the court abrogated *Stoudemire* and *Preuss*, holding that habitual offender status can be based on multiple convictions arising from a single criminal episode. Even under the pre-*Gardner* law, however, it is clear that petitioner could have been sentenced as an habitual offender on the basis of multiple convictions for multiple criminal episodes, even though they were charged in a single case.

(2d Cir. 1984); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975). Petitioner nevertheless argues that counsel was ineffective for allowing him to plead guilty without establishing a factual basis. Specifically, he contends that no factual basis was established to show that his touching of the victims was intentionally or for a sexual purpose. This claim is without merit, because a factual basis for the plea was sufficiently established. At the plea hearing, with respect to each charge petitioner admitted to engaging in "sexual contact" with the victims. *See* Plea Tr., at 9-10. As explained above, the term "sexual contact" is a term of art explicitly defined in the criminal sexual conduct statutes to be a touching done for a sexual purpose. Under Michigan law, "[a] factual basis for acceptance of a plea exists if an inculpatory inference can reasonably be drawn by a jury from the facts admitted by the defendant even if an exculpatory inference could also be drawn and defendant asserts the latter is the correct inference." *In re Guilty Plea Cases*, 395 Mich. 96, 130, 235 N.W.2d 133, 145 (1975). In light of the fact that the statute defines "sexual contact" as an intentional touching done for a sexual purpose, petitioner's "affirmative response to the court's question asking if there was actual sexual contact" provides a sufficient factual basis for the plea. *People v. Widener*, 79 Mich. App. 369, 372, 261 N.W.2d 326, 327 (1977). Thus, counsel was not ineffective in this respect.[9]

Petitioner also contends that counsel was ineffective for allowing him to plead guilty in a court which lacked jurisdiction to try him under a defective information. As explained above, however, the circuit court had jurisdiction to try petitioner, and the Information filed by the prosecutor was not

---

[9]*Coddington v. Langley*, 202 F. Supp. 2d 687 (E.D. Mich. 2002) (Tarnow, J.), *rev'd*, 77 Fed. Appx. 869 (2003), upon which petitioner relies, does not compel a different conclusion. In that case, the Court concluded that appellate counsel was ineffective for failing to challenge the factual basis of the plea, because a factual basis had not been established. The record established that the petitioner was of limited mental ability, and had only admitted to a sexual "touching" of the victim, not "sexual contact," and had expressly denied any sexual purpose. *See id.* at 703. Here, on the contrary, petitioner admitted to the statutory phrase "sexual contact," and as the Michigan Court of Appeals's decision in *Widener* makes clear, this was sufficient to establish a factual basis.

defective.  Thus, petitioner cannot show that counsel was ineffective for allowing him to plead guilty on these bases.

### d.  Innocence

Petitioner further argues that his plea was invalid because he is innocent of the charges against him.  This claim provides no basis for habeas relief.  A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Thus, the existence of new evidence, standing alone, is not a basis for granting the writ.  As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id.* at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief.

Nor does petitioner's assertion of innocence after the plea was entered render involuntary his otherwise valid plea.  As another court observed long ago, there are "no cases which hold that denial of guilt, under oath, subsequent to the entry of a guilty plea but prior to sentencing renders the plea

involuntary as a matter of constitutional law." *Hansen v. Mathews*, 296 F. Supp. 1398, 1331 (E.D. Wis. 1969), *aff'd*, 424 F.2d 1205 (7th Cir. 1970). Although *Hansen* was decided nearly forty years ago, this observation holds true today. It is well established that "factual guilt or innocence . . . is irrelevant to the question of whether [a defendant's] plea was voluntary." *United States ex rel. Smith v. Johnson*, 403 F. Supp. 1381, 1397 n.28 (E.D. Pa. 1975), *aff'd*, 538 F.2d 322 (3d Cir. 1976); *see also*, *Stewart v. Peters*, 958 F.2d 1379, 1385 (7th Cir. 1992) ("A guilty plea is no more involuntary because the defendant believes he is innocent than the settlement of a civil lawsuit is involuntary because the defendant refuses to admit liability and may believe in all sincerity that he is not liable in the least."). Indeed, the Supreme Court has explicitly held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime. *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970). "Because a trial court may accept a guilty plea even when it is coupled with a claim of innocence, a fortiori a court is not required to permit withdrawal of that plea merely because a defendant belatedly asserts his innocence." *Gunn v. Kuhlman*, 479 F. Supp. 338, 344 (S.D.N.Y. 1979) (footnotes omitted).

Nor can petitioner show a denial of his constitutional rights by the trial court's failure to allow him to withdraw his plea. Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). A criminal defendant has no constitutional right to withdraw a validly and voluntarily entered guilty plea. *See Chene v. Abramajtys*, No. 95-1491, 1996 WL 34902, at *2 (6th Cir. Jan. 29, 1996); *Metcalf v. Bock*, No. 00-10361-BC, 2002 WL 31749157, at *5 (E.D. Mich. Dec. 5, 2002) (Lawson, J.); *Freeman v. Muncy*, 748 F. Supp. 423, 429 (E.D. Va. 1990); *Williams v. Smith*, 454 F. Supp. 692, 696 (W.D.N.Y. 1978), *aff'd*, 591 F.2d 169 (2d Cir. 1979). Thus, the trial court's failure

32

to allow petitioner to withdraw his plea under the governing state court rules does not state a cognizable basis for habeas relief.

Further, even under the standard applicable to pleas in federal court under FED. R. CRIM. P. 11, petitioner cannot show that he would be entitled to withdrawal of his plea. Under this standard, a claim of innocence alone does not entitle a defendant to withdraw his plea; rather, withdrawal is permitted only in the "most compelling of circumstances indicating the innocence of the defendant." *United States v. Tolson*, 372 F. Supp. 2d 1, 24 (D.D.C. 2005), *aff'd*, 264 Fed. Appx. 2 (D.C. Cir. Jan. 25, 2008); *see also*, *United States v. Robinson*, 498 F. Supp. 2d 328, 331-32 (D.D.C. 2007). To be entitled to withdrawal, a "defendant must come forward with some evidentiary support for his innocence." *United States v. Abdelhadi*, 327 F. Supp. 2d 587, 595 (E.D. Va. 2004); *see also*, *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001). Here, petitioner does not have any evidentiary support for his claim of innocence other than his own denial of guilt. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### e. Threat to Remove Petitioner's Children from Home

Petitioner next contends that his plea was involuntary because it was based on a threat to remove from his home his children, who were not involved in any of the crimes charged against petitioner. The record is devoid of any evidence that such a threat occurred. To be sure, it is not unlikely that county or state child welfare workers were investigating the matter to determine whether petitioner's children should be removed from the home. There was nothing coercive or improper about this, however. Under Michigan law, child welfare agencies may petition the court to remove from a home a child "[w]hose home or environment, by reason of . . . criminality, or depravity on the part of a parent, . . . is an unfit place for the juvenile to live in." MICH. COMP. LAWS § 712A.2(b)(2). Under the doctrine of anticipatory neglect, it is irrelevant that petitioner was not accused of sexually

assaulting his own children; his sexual assault of other children is sufficient to raise an issue as to whether his own children's home environment was an unfit place for his children to live. *See In re Power*, 208 Mich. App. 582, 528 N.W.2d 799 (1995). Additionally, whether petitioner pleaded guilty or was convicted following a trial, his conviction would provide a basis for the termination of his parental rights. *See* MICH. COMP. LAWS § 712A.19b(3)(n)(I). Thus, there was nothing improper or coercive about the fact, if it was so, that state officials were investigating the suitability of petitioner's home for his children.

### f. Conditions of Pretrial Confinement

Finally, petitioner contends that his plea was involuntary because he was subjected to unconstitutional conditions of pretrial confinement which resulted in neurological deficits. Even assuming that conditions of confinement, in an extreme case, could render a plea involuntary, petitioner has made no showing that the conditions in his case did so. He has not alleged a nexus between his criminal case and his conditions, such as statements by guards that his condition would improve if he pleaded guilty. Further, petitioner had an opportunity to raise these issues at the plea hearing but did not do so, instead indicating that his plea was not based on threats and was his choice. In these circumstances, petitioner cannot show that the conditions of his pretrial confinement rendered his plea involuntary. *See United States v. Douglas*, 210 Fed. Appx. 771, 775 (10th Cir. 2006); *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 3.    Ineffective Assistance of Appellate Counsel

Petitioner also contends that appellate counsel was ineffective for failing to raise his various claims on direct appeal. With respect to appellate counsel, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86

(2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Here, as explained in this Report, all of petitioner's claims are without merit. Thus, petitioner cannot show that appellate counsel was ineffective for failing to raise the claims on direct appeal.

F.    *Remand/State Habeas Claims (Claim IV, Questions 21-24 and Questions 25-31)*

Petitioner next raises a number of challenges to the state courts' handling of his various post-conviction motions and proceedings. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Due Process on Remand (Claim IV, Questions 21-24)*

Petitioner contends that, following the Michigan Supreme Court's remand of his case for resentencing based on the misscoring of Offense Variable 13, he was denied due process of law because the trial court failed to following MICH. COMP. LAWS §§ 768.35, 768.29, and the Supreme Court's decision in *Hagans v. Levine*, 415 U.S. 528 (1974). Petitioner contends that these sources of law create protected liberty interests and that the trial court's failure to abide by these sources of law resulted in a denial of these protected liberty interests without due process of law. The Court should disagree. At the outset, it is important to note that it is well established that nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue[.]" *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). Thus, the state courts' alleged errors in his postconviction proceeding do not provide a basis for habeas relief. Further, as explained below, petitioner is not entitled to relief with respect to the specific post-conviction error claims he raises here.

Even assuming that §§ 768.29 and 768.35 create liberty interests protected by the Due Process Clause, petitioner has failed to show any violation of his rights under those provisions. Section 768.29 provides simply that "[i]t shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." MICH. COMP. LAWS § 768.29. Petitioner contends that the court failed to abide by this statute when it did not consider, at the time of resentencing, his request to withdraw his plea based on the absence of jurisdiction. However, by its terms, § 768.29 relates to a judge's duty during trial, not at sentencing or post-conviction proceedings. And, because the matter had been remanded for the limited purpose of resentencing, the trial judge was actually "limit[ing] . . . the argument of counsel to relevant and material materials," by focusing solely on the resentencing proceedings.

Likewise, petitioner cannot establish that the trial judge violated § 768.35, which in its entirety provides:

> Whenever any person shall plead guilty to an information filed against him in any court, it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea, to become satisfied after such investigation as he may deem necessary for that purpose respecting the nature of the case, and the circumstances of such plea, that said plea was made freely, with full knowledge of the nature of the accusation, and without undue influence. And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered and order a trial of the issue thus formed.

MICH. COMP. LAWS § 768.35. Here, the trial judge conducted a plea colloquy, examined petitioner, and determined that petitioner's plea was freely, knowingly, and voluntarily entered. Although petitioner now claims that his plea was invalid, he does not offer anything to show that the trial court failed to comply with § 768.35.

Finally, *Hagans v. Levine* stands for no more than the general proposition that, in federal court,

36

a plaintiff bears the burden of establishing subject matter jurisdiction.  Even if such a rule applies to state courts, as explained above in connection with petitioner's plea validity claims the circuit courts undoubtedly possess subject matter jurisdiction over criminal cases like petitioner's case, and the bind-over was sufficient to establish the trial court's personal jurisdiction over petitioner even if the Information was somehow deficient (which it was not).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these due process claims.

2.      *State Habeas Proceedings (Questions 25-31)*

Petitioner also contends that he was denied his right to present a state petition for writ of habeas corpus because the Michigan appellate courts precluded him from filing new civil actions until he had paid all the filing fees then owing in previous civil actions.  The United States Constitution provides, in a section limiting the otherwise enumerated powers of Congress, that "[t]he privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."  U.S. CONST. art. I, § 9, cl. 2.  However, unlike Article I, § 10, which by its terms expresses limitations on the States, the Suspension Clause of Article I, § 9 "is not restrictive of state, but only of national action."  *Gasquet v. Lapeyre*, 242 U.S. 367, 369 (1917); *see also*, *Barron v. City of Baltimore*, 32 U.S. (7 Pet.) 243, 248 (1833) (Marshall, C.J.) (Article I, § 9 "contains restrictions which are obviously intended for the exclusive purpose of restraining the exercise of power by the departments of the general [*i.e.*, national,] government.").  "[T]he refusal by state authorities to entertain a petition for a writ of habeas corpus, therefore, does not raise a federal question."  *Geach v. Olsen*, 211 F.2d 682, 684 (7th Cir. 1954); *see also*, *Lake v. Hope*, No. 94-35957, 1996 WL 183466, at *1 (9th Cir. Apr. 12, 1996).  Accordingly, the state courts' handling of petitioner's various state habeas petitions does not raise a cognizable claim for habeas relief.

G.      *Corpus Delicti (Claim V, Questions 16-17)*

Petitioner next contends that his conviction is invalid because, by allowing his waiver of a preliminary examination, the prosecution failed to establish the *corpus delicti* of the crime. The Court should conclude that this claim is without merit.

As the Michigan Court of Appeals has explained, the *corpus delicti* rule "bars the prosecution from using a defendant's confession in any criminal case unless it presents direct or circumstantial evidence independent of the defendant's confession that the specific injury or loss occurred and that some criminal agency was the source or cause of the injury." *People v. Ish*, 252 Mich. App. 115, 116, 652 N.W.2d 257, 258 (2002). However, the *corpus delicti* rule is not constitutionally mandated, and thus any violation of a state law *corpus delicti* rule is not cognizable on habeas review. *See Evans v. Luebbers*, 371 F.3d 438, 442-43 & n.3 (8th Cir. 2004); *Lucas v. Johnson*, 132 F.3d 1069, 1078 (5th Cir. 1998); *Emerson v. Smith*, No. 00-CV-73044, 2001 WL 561212, at *12 (E.D. Mich. Apr. 13, 2001) (Borman, J.).

Further, petitioner's case did not involve an extrajudicial confession, but a solemnized plea colloquy. The universal rule is that the *corpus delicti* rule does not apply to a defendant's statements made to establish a factual basis at a plea hearing. *See People v. McMahan*, 451 Mich. 543, 562, 548 N.W.2d 199, 207 (1996) (Boyle, J., dissenting); *State v. Rubiano*, 150 P.3d 271, 273-74 (Ariz. Ct. App. 2007) (citing cases). Thus, the prosecutor was not required to establish the *corpus delicti* of the crime before the court could accept petitioner's guilty plea. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Double Jeopardy (Claim VII, Questions 37-38)*

Finally, petitioner contends that if the Court grants him habeas relief, the Double Jeopardy Clause bars the state from retrying him because the state failed to establish the *corpus delicti* and because the Information must be quashed. Because, as explained throughout this Report, petitioner

38

is not entitled to relief on any of his claims, the state's ability or inability to retry him under the Double Jeopardy Clause is a moot issue. In any event, even if the Court disagrees with any of my recommendations and concludes that petitioner is entitled to habeas relief on his claims, the state would not be barred by the Double Jeopardy Clause from retrying petitioner. "[T]he Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct or collateral attack, because of some error in the proceedings below." *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988). Thus, even if petitioner is successful in having his conviction overturned and his guilty plea vacated, the Double Jeopardy Clause poses no bar to retrial on the charges for which he was convicted by his guilty plea. *See United States v. Thurston*, 362 F.3d 1319, 1323 (11th Cir. 2004); *United States v. Martinez-Gaytan*, 213 F.3d 890, 893 n.3 (5th Cir. 2000); *Taylor v. Kincheloe*, 920 F.2d 599, 602 & n.2 (9th Cir. 1990). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.      *Conclusion*

        In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. For the same reasons, the Court should deny petitioner's motion for summary judgment.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

        The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of

any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/30/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on July 30, 2009.

s/Eddrey Butts
Case Manager